UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **PALOMAR MEDICAL TECHNOLOGIES, INC.,** and **THE GENERAL HOSPITAL CORPORATION,** ) ) ) ) ) | |
| **Plaintiffs** ) ) | |
| **v.** ) ) | **Civil Action No. 05-10683-RWZ** |
| **CUTERA, INC.,** ) ) | |
| **Defendant** ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO CUTERA, INC.'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

Wayne L. Stoner (BBO # 548015)
Vinita Ferrera (BBO # 631190)
Michael Oblon (BBO # 634966)
Kate Saxton (BBO # 655903)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
(617) 526-5000

Dated: July 22, 2005

## TABLE OF CONTENTS

I.     Introduction.............................................................................................................................1

II.    Factual Background ..............................................................................................................2

       A.    Palomar Medical Technologies and The General Hospital Corporation.................2

       B.    Cutera......................................................................................................................3

       C.    The Related Litigation ...........................................................................................3

       D.    The Present Litigation............................................................................................4

III.   Argument ..............................................................................................................................7

       A.    The Court Should Deny Cutera's Motion to Dismiss Because The Court
             Has Both Specific And General Jurisdiction Over Cutera. .....................................7

             1.    This Court has specific jurisdiction over Cutera. ...........................................8

                   a.    Specific Jurisdiction Exists Under the Massachusetts
                         Long-Arm Statute. ...............................................................................8

                   b.    The Exercise of Jurisdiction Comports With Due Process....................9

                         i.     Cutera Directed Its Activities At Massachusetts Residents.........9

                         ii.    Plaintiffs' Claims Arise Out of Cutera's Activities in
                                Massachusetts. ..........................................................................10

                         iii.   The Assertion of Jurisdiction Over The Defendants Is
                                Reasonable and Fair...................................................................11

             2.    This Court also has general jurisdiction over Cutera.....................................13

                   a.    Cutera's contacts with Massachusetts are more than
                         sufficient to establish general jurisdiction. .........................................14

                   b.    It is reasonable for the Court to exercise jurisdiction over
                         Cutera...................................................................................................15

# TABLE OF AUTHORITIES

*Federal Cases*

*3D Sys. Inc. v. Aarotech Labs., Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998) ........................................................................................ passim

*Abbott v. Interactive Computing Devices, Inc.*,
   No. 96-01764B, 1998 Mass. Super. LEXIS 330, (Feb. 27, 1998)................................................8

*Adhesive Tech., Inc. v. Western Trimmings Corp*,
   No. 94-415-B, 1995 U.S. Dist. LEXIS 8889, (D.N.H. June 8, 1995) ...........................10, 12, 15

*Akro Corp. v. Luker*,
   45 F.3d 1541 (Fed. Cir. 1995), cert. denied 515 U.S. 1122 (1995).......................................9, 12

*Beverly Hills Fan Co v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994), cert. denied 512 U.S. 1273 (1994)............................................12

*Bradley Schlachter and Markets Direct, Inc. v. American Ingenuity, Inc.*,
   No. 3:96-CV-1914-P, 1997 U.S. Dist. LEXIS 20840, (N.D. Tex. July 11, 1997)....................11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................11, 12

*Donatelli v. National Hockey League*,
   893 F.2d 459 (1st Cir. 1990)....................................................................................................14

*Ealing Corp. v. Harrods Ltd.*,
   790 F.2d 978 (1st Cir. 1986)......................................................................................................8

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
   46 F.3d 138 (1st Cir. 1996)......................................................................................................13

*Helicopteros Nacionales De Columbia v. Hall*,
   466 U.S. 408 (1984)................................................................................................................13

*Hologic Inc v. Lunar Corp.*, 36 U.S.P.Q.2d 1182, 1186 (D. Mass. 1995) ......................................9

*In re Lupron Mkt. and Sales Practices Litig.*,
   245 F. Supp.2d 280 (D. Mass. 2003).......................................................................................14

*Lifting Tech., Inc. v. Dixon Indus., Inc.*,
   No. CV-96-68-M-CCL, 1996 WL 653391, (D. Mont. Aug. 27, 1996)................................10, 11

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)..................................................................12

*Moldflow Corp. v. Simcon, Inc.*,
  296 F. Supp.2d 34 (D. Mass. 2003)............................................................................................11

*Nova Biomedical Corp. v. Moller*,
  629 F.2d 190 (1st Cir. 1980)...............................................................................................7, 8

*Pfaff v. Wells Elecs., Inc.*,
  525 U.S. 55 (1998)...............................................................................................................11

*Pharmachemie B.V. v. Pharmacia*,
  934 F. Supp. 484 (D. Mass. 1996).....................................................................................13, 15

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
  215 F.3d 1246 (Fed. Cir. 2000) .............................................................................................11

*Systemation, Inc. v. Engel Indus., Inc.*,
  992 F. Supp. 58 (D. Mass. 1997).........................................................................................7, 9

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990), cert. denied, 499 U.S. 922 (1991)...........................................15

*Workgroup Technology Corp. v. MGM Grand Hotel, LLC*,
  246 F. Supp.2d 102 n.3 (D. Mass. 2003)..................................................................................13

**State Cases**

*Good Hope Indus., Inc. v. Ryder Scott Co*,
  378 Mass. 1, 6 (1979) ........................................................................................................7, 8

*Tatro v. Manor Care, Inc.*,
  416 Mass. 763 (1994).............................................................................................................7

**Federal Statutes**

28 U.S.C. § 1391.....................................................................................................................15

34 U.S.C. § 271(a) ....................................................................................................................9

35 U.S.C. § 271(a) ..................................................................................................................11

## I.    Introduction

After over three years of litigating a nearly identical lawsuit before this Court, Defendant

Cutera, Inc. ("Cutera") now inexplicably seeks to dismiss the above-captioned action, claiming

that this Court lacks personal jurisdiction and is an improper venue for this related lawsuit.

Cutera's position is puzzling, to say the least. In support of its Motion to Dismiss, Cutera makes

numerous misstatements regarding the facts relevant to the Court's analysis. For example,

Cutera claims that this Court lacks jurisdiction because, as of April 7, 2005, Cutera had not

"offered for sale any of its pulsed light products for permanent hair reduction in Massachusetts".

(Declaration of Ronald Santilli ("Santilli Decl.") at ¶ 4). This is untrue. As the Declaration of

Faye Jenkins (filed herewith) demonstrates, on April 7, 2005, the very day Palomar Medical

Technologies, Inc. and The General Hospital Corporation (collectively, "Plaintiffs") filed this

lawsuit, Cutera sent Ms. Jenkins sales and promotional materials which included information on

Cutera's pulsed light products for hair removal. (Jenkins Decl. at ¶ 4; Jenkins Ex. 1). These

materials constituted an offer of sale for Cutera's pulsed light products and as such, are an act of

infringement that clearly provides a basis for specific jurisdiction. Second, in addition to

misrepresenting the factual basis for specific jurisdiction, Cutera fails to even address the fact

that its extensive and substantial contacts with Massachusetts subject it to general jurisdiction by

this Court.

Finally, Cutera neglects to inform this Court that after Plaintiffs filed their suit, Cutera

filed not one, but two declaratory judgment actions against Plaintiffs in other federal courts

around the county arising out of the exact same allegations as the present infringement case filed

by Plaintiffs. The claims in these declaratory judgment actions are likely to involve virtually

identical witnesses, documents,  and legal issues as are involved in the present infringement case.

In addition, all three of these actions involve facts and legal issues that are similar to those

- 1 -

involved in the related lawsuit also pending before this Court. Judicial economy and efficiency therefore dictate that that the present litigation should continue here and not, as Cutera now attempts, in an entirely new forum with an entirely new judge -- one that Cutera no doubt hopes will be more sympathetic to its baseless allegations.

For these reasons, as set forth more fully below, Cutera's motion should be denied in its entirety.

## II.    Factual Background

### A.    Palomar Medical Technologies and The General Hospital Corporation

Plaintiff Palomar Medical Technologies, Inc. ("Palomar") is a Delaware corporation with a principal place of business in Burlington, Massachusetts. (Declaration of Patricia A. Davis, Esq. ("Davis Decl.") at ¶ 3). Palomar employs approximately 180 employees, substantially all of whom are located at Palomar's Burlington, Massachusetts headquarters. (*Id*. at ¶ 4). All of Palomar's manufacturing, and substantially all of its research and development, for its light-based hair removal systems is done at its Burlington, Massachusetts headquarters. (*Id*. at ¶ 5).

Plaintiff The General Hospital Corporation is a Massachusetts not-for-profit corporation doing business as the Massachusetts General Hospital ("MGH"). (Davis Decl. at ¶ 7). MGH's principal place of business is 55 Fruit Street, Boston, Massachusetts 02114. (*Id.* at ¶ 8).

Palomar is the exclusive licensee of the two patents asserted in this case: U.S. Patent No. 5,595,568 (the "'568 patent") and U.S. Patent No. 5,735,844 (the "'844 patent"). (Davis Decl. at ¶ 9). MGH is the owner by assignment of the '568 patent and the '844 patent. (*Id*.). Generally, these patents describe methods and apparatuses for the simultaneous removal of a plurality of hairs from a skin region using optical radiation (light), while minimizing damage to the skin. (*See* Exs. 1, 2). Two of the three inventors on the '568 patent and the '844 patent are located in

- 2 -

Boston, Massachusetts; the other inventor on these patents is located in New York. (Davis Decl. at ¶ 10).

Virtually all other fact witnesses and documents relating to the '568 and the '844 patents are located in Massachusetts.

## B.   Cutera

The defendant, Cutera, Inc., is a Delaware corporation with its principal place of business in Brisbane, California. (Santilli Decl. at ¶ 3). Cutera has sold its devices to numerous physicians and spas located throughout Massachusetts, and presumably has derived substantial revenue from such Massachusetts customers. (*See* Ex. 3). Cutera warranties its products to its customers, and contracts with them to provide ongoing service and support. (*See* Exs. 4, 19). Further, Cutera conducts seminars and workshops designed to promote or educate doctors and others on the use of its light based hair removal devices in Massachusetts. (*See* Ex. 5). Cutera also attends and exhibits at tradeshows in Massachusetts and, according to Cutera's website, Cutera will be in attendance at the Pri Med East Tradeshow in Boston, Massachusetts in November 2005. (*See* Ex. 6). Finally, for the last several years, Cutera has employed a sales representative responsible for the New England area. (Davis Decl. at ¶ 16).

## C.   The Related Litigation

As this Court is doubtless aware, in February 2002, Plaintiffs filed a lawsuit against Cutera alleging infringement of the '844 patent. (*See* Ex. 7). On April 18, 2002, Cutera answered Plaintiffs' Complaint in that action and also asserted counterclaims seeking a declaratory judgment that the '844 patent is not infringed and is invalid. (*See* Ex. 8). In its Answer, Cutera admitted that this Court has jurisdiction over Plaintiffs' claims, as well as Cutera's counterclaims. (*See id.*). In June 2003, following extensive claim construction briefing, Cutera amended its Answer to include a request for a declaratory judgment that the '844 patent

- 3 -

was unenforceable for inequitable conduct. (*See* Ex. 9). Again, at no point in its Amended

Answer did Cutera contest jurisdiction or venue by this Court – indeed, Cutera again admitted

jurisdiction and venue were proper. (*See id.*).

This related litigation has progressed through a Markman hearing and ruling, as well as

substantial fact and expert discovery, including numerous motions to compel by Cutera. Cutera

subsequently moved for summary judgment on its counterclaims and the parties have completed

thorough briefing on this motion. The Court heard oral argument on Cutera's motion in March

2005, and took the matter under advisement. The parties are making preparations to try this case

before the Court at the earliest date following the Court's ruling on Cutera's summary judgment

motion.

## D.    The Present Litigation

In February 2005, Palomar attended the American Academy of Dermatology ("AAD")

tradeshow in New Orleans, Louisiana.[1] (Davis Decl. at ¶ 11). At the February 2005 AAD

tradeshow, Palomar learned that Cutera was advertising and promoting new pulsed light

technology for hair removal and was preparing to manufacture and sell such products using this

technology as soon as it received the necessary FDA clearance. (*Id*. at ¶ 14). Specifically,

Cutera was distributing literature to prospective customers and other interested parties, including

Palomar, concerning its Solera Opus platform, which uses pulsed light technology for hair

removal. (*See* Davis Ex. A).

On February 18, 2005, Cutera issued a press release announcing "Cutera Unveils the

Solera Platform at AAD". (*See* Ex. 10.) The press release notes that the "Solera Opus ™ brings

---

[1]     The AAD is one of the largest tradeshows for the cosmetic dermatology industry and is attended by many Massachusetts customers. (Davis Decl. at ¶ 12). The AAD is typically used by many companies as an opportunity to launch new products. (*Id.*) It is also common for companies to send out promotional literature to potential customers prior to the actual AAD tradeshow. (*Id.* at ¶ 13).

- 4 -

Cutera's intelligent pulsed light technology for laser hair removal *[2] ... to a tabletop console."
(*Id.*) The press release also quotes Kevin Connors, President and CEO of Cutera as stating that
"[t]he Solera Opus is ideal for any busy aesthetic clinic with a growing ... hair removal
practice." (*Id.*)

On or about April 1, 2005, Palomar attended ASLMS, another widely attended cosmetic
dermatology meeting/tradeshow. (Davis Decl. at ¶ 15). At the ASLMS meeting/tradeshow,
Cutera was again distributing promotional material for its pulsed light technology products for
hair removal, including the Solera Opus Platform and an additional product, the ProWave 770
("PW 770"). (*See* Davis Ex. B). Cutera's promotional literature describes the PW 770 as using
"Intelligent Pulsed Light" technology to "disable[] the hair structure without damaging the
surrounding dermis and epidermis. (*Id.*) Cutera further indicated that its PW 770 product "will
be available on the Solera Opus or the Xeo[3] platform". (*Id.*)

On March 31, 2005, the FDA issued an approval notice and letter for Cutera's Optional
Pulsed Light Hand Piece Family. (*See* Exs. 11, 12). In its approval letter, the FDA indicated
that it agreed with Cutera that Cutera's Optional Pulsed Light Hand Piece Family was
"substantially equivalent" to those predicate devices listed in the 510K Summary provided by
Cutera to the FDA. (*See* Exs. 12, 13). Among the predicate devices listed by Cutera are the
Palomar Star-Lux pulsed light and laser platform and the Palomar Este-Lux pulsed light
platform, which are both cleared by the FDA for hair removal. (*See id.*) The FDA's March 31,
2005 approval letter stated that the Cutera Optional Pulsed Light Hand Piece Family was
indicated for "removal of unwanted hair from all skin types ... or permanent, hair reduction."

---

[2]      This "*" refers to the fact that Cutera's Solera Opus product had not yet received FDA clearance for hair
removal.

[3]      Cutera's XEO product is one of the devices that is alleged to infringe the '844 patent in the pending related
litigation.

(*See* Ex. 12). Also on March 31, 2005, FDA granted approval to Cutera for the Solera Opus Aesthetic Product. (*See* Ex. 14).

On April 7, 2005, Cutera sent an unsolicited promotional package to Faye Jenkins, a registered nurse located in Massachusetts. (Jenkins Decl. at ¶ 1, Jenkins Ex. 11). Ms. Jenkins owned a cosmetic laser and skin care business in Massachusetts until July 19, 2005, and performed light based hair removal as one of her services. (*Id.* at ¶ 3). Among the materials Ms. Jenkins received from Cutera was a brochure discussing its XEO product, which is promoted for, among other things, hair removal. (*Id.* at ¶ 5). This brochure states that "[t]he XEO incorporates effective hair removal … with an integrated 600-800 IPL [intense pulsed light] device." (*See id* at ¶ 6; Jenkins Ex. 1).

Also on April 7, 2005, Plaintiffs filed the above-captioned litigation, alleging that Cutera has and is infringing and inducing infringement of the '568 and '844 patents by "making, using, selling and offering for sale products using pulsed light technology for hair removal, including but not limited to the "Solera Opus" product in Cutera's "Solera platform" and other products using pulsed light and light based technology in Cutera's "XEO platform." (*See* Complaint, ¶¶ 8, 12). Plaintiffs further allege that "upon information and belief, Cutera's 'PW 770' handpiece is utilized in the Solera and XEO platforms for performing hair removal treatment." (*Id.*)

On June 13, 2005, Cutera issued another press release regarding its pulsed light products entitled "Cutera's New Hair Removal Innovation: the ProWave 770". (*See* Ex. 16). This press release touts the PW 770 as "the most significant innovation in light-based hair removal in 5 years". (*Id.*) The press release concludes by noting that the PW 770 "is available on Cutera's new Solera ™ Opus  platform -- the compact, table top platform introduced earlier this year." (*Id.*)

- 6 -

On July 6, 2005, Cutera filed the present Motion to Dismiss for lack of personal jurisdiction and improper venue. One day before filing the present motion, Cutera filed a complaint for declaratory judgment in the Northern District of California. (*See* Ex. 17). In that Complaint, Cutera seeks a declaration that the '568 patent is not infringed, is invalid and is unenforceable. (*Id.*) Cutera also seeks a declaratory judgment that the '844 patent is not infringed, is invalid and is unenforceable -- the exact same counterclaims Cutera asserted against Plaintiffs in the related litigation currently being considered on summary judgment by this Court. (*Id.*) On July 11, 2005, Cutera filed an identical complaint to that filed with the Northern District of California in the District of Delaware. (*See* Ex. 18).

## III.  Argument

### A.  The Court Should Deny Cutera's Motion to Dismiss Because The Court Has Both Specific And General Jurisdiction Over Cutera.

Specific jurisdiction over an out-of-state defendant is appropriate if the forum state's long-arm statute permits the assertion of jurisdiction consistent with federal due process. *See, 3D Sys. Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1377 (Fed. Cir. 1998). The Massachusetts Supreme Judicial Court has stated that Massachusetts' long-arm statute is coextensive with the limits of due process. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771 (1994) (the long-arm statute functions as an "assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States") (quoting *Good Hope Indus., Inc. v. Ryder Scott Co*, 378 Mass. 1, 6 (1979) (the long-arm statute and due process inquiries "may converge"). However, federal courts in this circuit generally address the question of whether jurisdiction exists by analyzing both the Massachusetts long-arm statute and the due process clause. *See, e.g., Systemation, Inc. v. Engel Indus., Inc.,* 992 F. Supp. 58, 59 (D. Mass. 1997); *Nova Biomedical*

*Corp. v. Moller*, 629 F.2d 190, 191 (1st Cir. 1980) ("all questions of long arm jurisdiction in Massachusetts do not collapse into a single constitutional inquiry.").

Because Cutera's conduct satisfies both the Massachusetts long-arm statute and federal due process concerns, the exercise of personal jurisdiction by this Court is proper, and Cutera's Motion to Dismiss must be denied.

### 1.    This Court has specific jurisdiction over Cutera.

Specific jurisdiction "exists when a non-resident defendant purposefully establishes minimum contacts with the forum state, the cause of action arises out of those contracts, and jurisdiction is constitutionally reasonable." *3D Sys. Inc.,* 160 F.3d at 1378.

### a.    Specific Jurisdiction Exists Under the Massachusetts Long-Arm Statute.

The Massachusetts long-arm statute specifically authorizes this Court to exercise jurisdiction over a party where, *inter alia*, the cause of action arises from that party: (a) "transacting any business" in Massachusetts; or (b) "causing tortious injury by an act or omission" in Massachusetts.  Mass. Gen. L. c. 223A § 3.[4]

While jurisdiction exists if either of these conditions are satisfied, *see Abbott v. Interactive Computing Devices, Inc.*, No. 96-01764B, 1998 Mass. Super. LEXIS 330, at *3-4 (Feb. 27, 1998), here, the exercise of jurisdiction is proper under both tests.  Cutera's advertising, marketing and offering to sell its pulsed light products for hair removal to Massachusetts customers constitute both "transacting business" and "causing tortious injury" in Massachusetts. *See Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir. 1986) (sending single telex to Massachusetts is "transacting business"); *Good Hope Indus.*, 378 Mass. at 11 (sending periodic

---

[4]    If, however, the Court agrees that the Massachusetts long-arm statute is coextensive with due process, it need not analyze the long-arm statute and need only analyze the issue as outlined in section A.1.b. *3D Sys., Inc.*, 160 F.3d at 1377 (same).

- 8 -

reports and initiating telephone communications to Massachusetts is "transacting business"); *3D Sys.*, 160 F.3d at 1378 ("patent infringement results from an offer to sell as well as from the sale itself"); *Systemation*, 992 F. Supp. at 60 (allegations of patent infringement constitute tortious injury) (citing *Hologic Inc v. Lunar Corp.*, 36 U.S.P.Q.2d 1182, 1186 (D. Mass. 1995)).

These acts – in particular, Cutera's offer to sell its pulsed light products for hair removal to Ms. Jenkins (and presumably other Massachusetts customers) – are precisely the events that give rise to Plaintiffs' claims. *See* 34 U.S.C. § 271(a) (offer to sell infringing product is an act of infringement); *3D Sys.*, 160 F.2d at 1378 (same). Thus, the requirements of the Massachusetts long–arm statute are met.

### b.    The Exercise of Jurisdiction Comports With Due Process.

The Federal Circuit employs a three-prong test to determine whether specific jurisdiction properly exists under the due process clause: (1) did the defendant purposefully direct its activities at residents of the forum; (2) does the claim arise out of or relate to those activities; and (3) is assertion of jurisdiction reasonable and fair. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995), *cert. denied* 515 U.S. 1122 (1995). Cutera's conduct meets each of these requirements.

### i.    Cutera Directed Its Activities At Massachusetts Residents.

Cutera has actively promoted its pulsed light products for hair removal in Massachusetts by among other things:

*   Sending promotional materials for its pulsed light products to Ms. Jenkins (*see* Jenkins Decl. at ¶¶ 4-6; Jenkins Ex. 1), and presumably other Massachusetts potential customers, in an effort to solicit business from such customers. The promotional literature received by Ms. Jenkins clearly states that the XEO product, which, among other things, is indicated for hair removal "incorporates" the pulsed light technology, (*see* Jenkins Ex. 1), which is alleged to infringe the '568 and '844 patent.

- 9 -

- Employing a sales representative for the New England area who is charged with promoting and selling Cutera's products, including its hair removal products, which includes Cutera's pulsed light technology products. (*See* Davis Decl. at ¶ 16).

- Attending tradeshows frequented by Massachusetts customers at which Cutera has promoted its pulsed light products for hair removal. (*See* Davis Decl. at ¶¶ 14-15).

- Posting on its website, which is easily accessible by Massachusetts consumers, news releases regarding Cutera's pulsed light products (*see* Exs. 10, 16), as well as a Product Request Form that allows a consumer to contact Cutera for additional information on Cutera's products, include the Solera Opus Platform and the ProWave 770. (*See* Ex. 15).

Numerous courts have held facts such as these to be ample evidence that a defendant has purposefully directed its activities to a forum state. *See 3D Sys.*, 160 F.3d 1378 (finding that defendant's sending promotional materials to potential customers sufficient for jurisdictional purposes); *Lifting Tech., Inc. v. Dixon Indus., Inc.*, No. CV-96-68-M-CCL, 1996 WL 653391, at *3 (D. Mont. Aug. 27, 1996) (defendant's advertisements in trade journal which reached Montana subscribers, including several of plaintiff's customers, was sufficient for personal jurisdiction); *see Adhesive Tech., Inc. v. Western Trimmings Corp*, No. 94-415-B, 1995 U.S. Dist. LEXIS 8889, at *11 (D.N.H. June 8, 1995).

### ii. Plaintiffs' Claims Arise Out of Cutera's Activities in Massachusetts.

Cutera asserts summarily that "Plaintiffs lawsuit does not arise from or relate to [activities directed at Massachusetts residents]" because, as of the date this lawsuit was filed, "Cutera did not make, use, sell or offer for sale any of the accused products in Massachusetts." (Cutera Br. at 5). This assertion is patently false. Cutera, in fact, had promoted the accused products to Massachusetts customers as of that date. (*See supra* at 6.) Indeed, in an effort to generate interest in the accused products to the commercial detriment of Plaintiffs, Cutera sent promotional materials concerning at least one of the accused products to a registered nurse in Massachusetts the very day that this action was filed. (*See* Jenkins Decl. at ¶ 4; Jenkins Ex. 1.)

- 10 -

It is inconceivable that Ms. Jenkins is the only Massachusetts customer to have received such promotional materials as of that date. Such conduct constitutes an offer to sell the accused products, which as a matter of law, is an act of infringement. *See* 35 U.S.C. § 271(a); *3D Sys.*, 160 F.3d at 1378 (where defendant sent promotional materials, solicited orders, and submitted price quotes to potential customers in California, it had offered an allegedly infringing product for sale and, thus, had committed an infringing act in the state); *Bradley Schlachter and Markets Direct, Inc. v. American Ingenuity, Inc.*, No. 3:96-CV-1914-P, 1997 U.S. Dist. LEXIS 20840, at *6 (N.D. Tex. July 11, 1997); *Lifting Tech., Inc.* 1996 U.S. Dist. LEXIS 21852 at *11.[5]

### iii. The Assertion of Jurisdiction Over The Defendants Is Reasonable and Fair.

When, as here, a party has purposefully directed its activities at a forum state, to avoid jurisdiction, that party "must present *a compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (emphasis added). Cutera has made no attempt to articulate such a compelling case here, and the facts demonstrate that such attempts would be futile.

As the Federal Circuit has held, circumstances in which a party defeats otherwise constitutional personal jurisdiction "are limited to the rare situation in which the plaintiff's interest and the state's interests in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the

---

[5]     In *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-1255 (Fed. Cir. 2000), the Federal Circuit discussed the *3D Systems* case in view of the Supreme Court's decision in *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), and expressly stated that *3D Systems* was "consistent with" the Court's suggestion that "the norms of traditional contract law" should be considered. In *Rotec*, the Federal Circuit held that there was no "offer to sell" sufficient to confer specific jurisdiction because there was no evidence that defendants in that case had communicated with the third parties in the United States in an attempt to market or sell the infringing system. *Id.* at 1255; *see also Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp.2d 34, 42 (D. Mass. 2003). Clearly, that is not the case here.

forum." *Beverly Hills Fan Co v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994), *cert. denied* 512 U.S. 1273 (1994).

Obviously, Plaintiffs' connections to Massachusetts, and Massachusetts connection to this controversy, are anything but attenuated. Both Plaintiffs are domiciled here, their employees are here, its regular patent and litigation counsel are here and the law firm responsible for prosecuting the patents-in-suit is here. (*See* Davis Decl. at ¶¶ 3-8). Moreover, Massachusetts "has a manifest interest in providing residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The injury of which Plaintiffs complain -- patent infringement -- "falls well within the boundaries of the sorts of injuries that [Massachusetts] has an interest in discouraging." *Akro*, 45 F.3d at 1549 (quoting *Burger King*, 471 U.S. at 473) (states have a "manifest interest" in providing its residents with a convenient forum for redressing injuries by out of state actors). *See also Adhesive Tech., Inc.*, 1995 U.S. Dist. LEXIS 8889, at *13 (forum state has interest in hearing allegations of patent infringement occurring within state); *Beverly Hills Fan*, 21 F.2d at 1568 (Virginia's interest in discouraging injuries within its boundaries extends to patent infringement actions).

Moreover, none of the bases typically cited for finding the exercise of jurisdiction constitutionally unreasonable are present here. There is no clash in the laws of the forum state and another state because, regardless of where the action proceeds, Federal Circuit precedent will apply. *See 3D Sys.*, 160 F.3d at 1380. Nor is this an inconvenient forum for Cutera. *See id.* Cutera has not only solicited sales of the accused products from Massachusetts customers, but it has also sold other of its products to numerous doctors and spas in Massachusetts, has at least one sales representative who markets its products in Massachusetts, and has attended trade shows

and seminars in Massachusetts. In addition, as the Court is aware, Cutera is also currently
involved in litigation before this very Court in which Cutera has availed itself of the Court's
resources by asserting counterclaims challenging the validity and enforceability of the '844
patent, one of the same patents asserted in this litigation. It can hardly be deemed fundamentally
unfair to sue Cutera in this very district regarding its pulsed light products for hair removal, yet
fundamentally fair to sue Cutera in this district regarding its laser-based hair removal products.[6]

Finally, the related litigation (with which the Court already familiar) involves one of the
same patents at issue in the present litigation – the '844 patent, at least one of the same products
– the XEO, and, therefore, many of the same factual and legal issues. Given that the parties have
engaged in extensive litigation surrounding that lawsuit, it would be far more efficient for the
federal judicial system, as well as the parties, for the present matter to remain in Massachusetts
before this Court.

### 2.     This Court also has general jurisdiction over Cutera.

General jurisdiction exists where the litigation "is not directly based upon a defendant's
contacts with the forum, but the defendant has nevertheless engaged in 'continuous and
systematic activity,' unrelated to the suit, in the forum state." *Pharmachemie B.V. v. Pharmacia*,
934 F. Supp. 484, 491 (D. Mass. 1996) (quoting *Foster-Miller, Inc. v. Babcock & Wilcox
Canada*, 46 F.3d 138, 150 (1st Cir. 1996); *see also Workgroup Technology Corp. v. MGM
Grand Hotel, LLC*, 246 F. Supp.2d 102, 109 n.3 (D. Mass. 2003) (same); *Helicopteros
Nacionales De Columbia v. Hall*, 466 U.S. 408,414 (1984) (due process not offended where

---

[6]     Indeed, it is worth noting that a Cutera customer owning a XEO system, one of the products at issue in the
other action, can upgrade this system by simply purchasing a PW 770 handpiece (the pulsed light platform), which
is at issue in the present litigation. (*See* Ex. 19 (noting that Cutera "design[s] all products to allow all customers to
cost effectively upgrade to our multiapplication products.")

- 13 -

court subjects a defendant to general jurisdiction when "there are sufficient contacts between the
State and the foreign corporation.)

In analyzing whether sufficient contacts exist to exercise general jurisdiction the Court
must "gaug[e] the intensity and duration of the contacts between a resident and nonresident
defendant and the forum state." *In re Lupron Mkt. and Sales Practices Litig.,* 245 F. Supp.2d
280, 288 (D. Mass. 2003). The Court must examine (1) the defendant's contacts with the forum
to determine whether they are sufficiently abundant to allow for the exercise of general
jurisdiction, and (2) whether it is reasonable to exercise such jurisdiction. *Donatelli v. National
Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). Courts engaging in such an analysis may
consider, for example, the presence of a defendant's employees in the forum state, "contracts
signed with state residents, and the volume of business regularly transacted and solicited in the
forum state." *In re Lupron Mkt. and Sales Practices Litig.*, 245 F. Supp.2d at 289.

### a.     Cutera's contacts with Massachusetts are more than sufficient to establish general jurisdiction.

Cutera has been and continues to engage in substantial business in Massachusetts. As
discussed above, Cutera routinely mails promotional and sales information to Massachusetts
residents regarding its products, including its pulsed light hair removal products. (*See supra* at
6.) Cutera has sold its devices to numerous physicians and spas located throughout
Massachusetts, and presumably has derived substantial revenue from such Massachusetts
customers. (*See* Ex. 3). Cutera warranties its products, as well as signs contracts with its
customers to provide ongoing service and support to such customers. (*See* Exs. 4, 19). Cutera
conducts seminars and workshops in Massachusetts designed to promote its light based hair
removal devices and educate doctors and others on the use of its devices. (*See* Ex. 5). Cutera
also attends and exhibits at tradeshows in Massachusetts and, according to Cutera's website,

- 14 -

Cutera will be in attendance at the Pri Med East Tradeshow in Boston, Massachusetts in November 2005. (*See* Ex. 6). For the last several years, Cutera has employed a sales representative responsible for the Northeast. (Davis Decl. at ¶ 16). Such activities are precisely the type of "extensive activities" that "substantially affect the commerce of [Massachusetts] such that [Cutera] is 'doing business'" here. *Pharmachemie B.V.*, 934 F. Supp. at 490.

### b. It is reasonable for the Court to exercise jurisdiction over Cutera.

Given Cutera's extensive contacts with Massachusetts, it is certainly reasonable for Cutera to assume that it would be hailed into court in Massachusetts. Cutera has clearly availed itself of the benefits of conducting business in Massachusetts and indeed continues to do so at the present time. It is therefore appropriate that the present dispute should be resolved in Massachusetts.

Further, as noted above, the '844 patent, one of the patents at issue in the present litigation has been and continues to be extensively litigated by the parties before this very Court. Efficiency and judicial economy are best served by this Court adjudicating the present dispute, which will doubtless involve many of the same documents and witnesses as those relevant to the earlier, related litigation.

### B. Massachusetts Is The Proper Venue For This Lawsuit.

Venue under 28 U.S.C. § 1391 (c) is proper in any district where a defendant is subject to personal jurisdiction. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991). "A corporate defendant may be properly sued for patent infringement in any district where it is subject to personal jurisdiction." *Adhesive*

- 15 -

*Tech.,* 1995 U.S. Dist. Lexis. 8889, at * 15. As is explained above, this Court has both specific

and general jurisdiction over Cutera. Venue is, therefore, proper in Massachusetts.[7]

Respectfully submitted,

PALOMAR MEDICAL TECHNOLOGIES,
INC. and THE GENERAL HOSPITAL
CORPORATION

By their attorneys,

Wayne L. Stoner (BBO # 548015)
Vinita Ferrera (BBO # 631190)
Michael Oblon (BBO # 634966)
Kate Saxton (BBO # 655903)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
Dated: July 22, 2005                          (617) 526-5000

---

[7]     Although Plaintiffs believe that the above facts are more than sufficient to demonstrate that this Court has specific and general jurisdiction over Cutera, if the Court believes that it requires more information about Cutera's activities in Massachusetts, Plaintiffs would respectfully request limited, expedited discovery on the jurisdictional issue before the Court decides this motion. For example, Plaintiffs expect that Cutera has solicited and sent sales material for its pulsed light products to Massachusetts consumers other than Ms. Jenkins prior to the filing of the Complaint in this action.

- 16 -

## CERTIFICATE OF SERVICE

I, Kate Saxton, certify that on July 22, 2005, I caused a copy of the foregoing document to be sent by Federal Express to counsel for the Defendant, Timothy E. DeMasi, Esq., Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119.

Kate Saxton

- 17 -