UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PALOMAR TECHNOLOGIES, INC. and THE GENERAL HOSPITAL CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> CUTERA, INC., <br><br> Defendant. | Civil Action No. 05-10683 RWZ |

**REPLY IN SUPPORT OF
DEFENDANT CUTERA, INC.'S MOTION TO DISMISS
PURSUANT TO RULES 12(B)(2) AND 12(B)(3)**

Defendant Cutera, Inc. submits this Reply in Support of its Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3).[1]

I.  **INTRODUCTION**

It is now clear that Plaintiffs did not investigate whether Cutera was subject to personal jurisdiction in Massachusetts before they filed their Complaint. Plaintiffs' argument that Cutera is subject to specific jurisdiction in Massachusetts is based entirely on the premise that the promotional materials Cutera sent to Ms. Faye Jenkins – which could not have been received by her until after the Plaintiffs filed their Complaint[2] – constituted an "offer to sell" the

---

[1] Cutera submits the Second Declaration of Ronald Santilli in support of its Reply.

[2] The post-mark on the envelope containing the promotional materials shows that they were sent to Ms. Jenkins by U.S. Mail on April 7, 2005, from Brisbane, California. *See* Jenkins Decl. Ex. 1. If those materials were sent from California by U.S. Mail on April 7, 2005, they could not have been received by Ms. Jenkins in Massachusetts until sometime after April 7, 2005, the day Plaintiffs filed their Complaint.

allegedly infringing pulsed-light products under 35 U.S.C. § 271(a).[3] *See* Opp. at 1, 8, 9, 11. But those promotional materials did not constitute an "offer to sell" under § 271(a) because they did not contain <u>any</u> necessary terms such as price, quantity, delivery, or payment terms. In addition, the promotional materials sent to Ms. Jenkins did not even relate to the pulsed-light products accused of infringement in this case. Because Cutera's promotional materials were not an offer to sell the accused product, Plaintiffs cannot satisfy the requirements of either the Massachusetts Long-Arm Statute or the Due Process Clause. Plaintiffs have similarly failed to carry their burden of establishing that Cutera's contacts with Massachusetts are sufficient to establish general jurisdiction.[4] Accordingly, the present Complaint should be dismissed for lack of personal jurisdiction and improper venue.

## II.   CUTERA IS NOT SUBJECT TO SPECIFIC JURISDICTION IN THIS ACTION

### A.   The Massachusetts Long-Arm Statute Does Not Authorize the Assertion of Specific Jurisdiction over Cutera

In an effort to satisfy sections 3(a) and 3(c) of the Massachusetts long-arm statute, Plaintiffs claim that the promotional materials that Cutera sent to Ms. Jenkins "constituted an offer for sale of Cutera's pulsed light products and as such, are an act of infringement that clearly provides a basis for specific jurisdiction." Opp. at 1; *see also* Opp. at 8, 9. That is incorrect for

---

[3] In the present case, Plaintiffs accuse Cutera's "products using <u>pulsed light technology</u> for hair removal" of infringement. Compl. ¶¶ 8 &12 (emphasis added). By contrast, Plaintiffs' earlier case accuses Cutera's <u>laser</u> hair removal products of infringement.

[4] Unable to establish personal jurisdiction over Cutera in Massachusetts, Plaintiffs spend much of their Opposition arguing that venue is more convenient in Massachusetts than in California or Delaware. *See* Opp. at 1-3. For example, Plaintiffs argue that they, two of the inventors, and documents relating to the patents are located in Massachusetts. *Id.* at 2-3. Those allegations are irrelevant to the question of whether Cutera is subject to personal jurisdiction in Massachusetts.

at least two reasons: (1) the promotional materials were not an offer to sell, and (2) the promotional materials do not relate to the accused product.[5]

### 1. The promotional materials sent to Ms. Jenkins did not constitute an "offer to sell" under § 271(a)

Under § 271(a), "the meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). According to the Restatement (Second) of Contracts § 24 (1981), an "offer" is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[6] Similarly, *Corbin on Contracts* states that "the best short description . . . is that an offer creates a power of acceptance in the offeree." 1 Arthur Linton Corbin, *Corbin on Contracts* § 1.11 (1964). "While these common-law sources may vary slightly in their phrasing, they agree that an offer creates the power of acceptance in the offeree. That is, once an offer has been made, the offeree has the power to accept it and create a binding contract without any further action by the offeror." *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 44 (D. Mass. 2003).

"In order to create the power of acceptance, an offer must be sufficiently definite." *Id.* Thus, courts have required that "offers to sell" under § 271(a) include, *inter alia*, a description of the allegedly infringing product, a price, a quantity, delivery terms and payment

---

[5] Plaintiffs are "puzzl[ed]" by Cutera's failure to move to dismiss the case they filed against Cutera's laser products for lack of personal jurisdiction. *See* Opp. at 1. Unlike in the present case, however, Cutera had sold the accused laser products in Massachusetts before the filing date of Plaintiffs' Complaint in the first case. That argument reveals Plaintiffs' fundamental misunderstanding of specific jurisdiction.

[6] "Although not authoritative, the Restatement has long been recognized as useful in establishing the general law governing the law of contracts, including offers." *Rotec*, 215 F.3d at 1257 n.5.

3

terms. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308-09 (Fed. Cir. 1999) (looking to description of product, price, quantity and delivery dates); *Moldflow*, 296 F. Supp. 2d at 44 (looking to description of product, pricing information, quantity, time of delivery and terms of payment). "Conversely, a communication that does not contain specific and definite terms is usually treated as an advertisement or a solicitation, and not as an offer." *Moldflow*, 296 F. Supp. 2d at 44.

Here, the promotional materials that Cutera sent to Ms. Jenkins consisted of a Xeo SA brochure, a CoolGlide brochure, pictures of various treatment results, an excerpt from a 2003 magazine article, a Titan brochure and marketing bulletin, and various articles written by clinicians. *See* Jenkins Decl. Ex. 1. But those promotional materials <u>do not include</u> a price, a quantity, delivery terms, or payment terms. In fact, Plaintiffs do not even argue that the materials contain any of those necessary contract terms. Because the materials did not include those terms, they did not create a power of acceptance in Ms. Jenkins and they could not as a matter of law constitute an "offer to sell" under § 271(a). *See HollyAnne*, 199 F.3d at 1308-09 (observing that offer to donate was not an "offer to sell" because, *inter alia*, it did not include a price, a quantity or delivery dates); *Moldflow*, 296 F. Supp. 2d at 44 (finding that "promotional materials in the form of 'flyers' [that] contained a description of the allegedly infringing [product] as well as some pricing information" were not offers to sell under § 271(a) because they did not include "information about quantity, time of delivery, or terms of payment").

Instead, Cutera's promotional materials were nothing more than invitations for offers. *See Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("[C]ontract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers . . . ."); *Pechiney Rhenalu v. Alcoa, Inc.*, 224 F.

Supp. 2d 773, 802 (D. Del. 2002) ("Advertisements, catalogs, and other promotional materials are generally considered invitations to solicit offers or enter into a bargain, not offers themselves.").[7]

Because Cutera's promotional materials were not an "offer to sell" under § 271(a), Cutera's act of sending those materials to Massachusetts did not constitute "transacting any business in this commonwealth" or "causing tortious injury by an act or omission in this commonwealth" from which Plaintiffs' cause of action arose. *See* Mass. Gen. Laws ch. 223A §§ 3(a) & 3(c). Accordingly, Plaintiffs have not satisfied the requirements of the Massachusetts Long-Arm Statute, and Cutera cannot be subject to specific jurisdiction in Massachusetts.

### 2. The promotional materials sent to Ms. Jenkins do not relate to Cutera's "products using pulsed light technology for hair removal"

The promotional materials sent to Ms. Jenkins cannot be used to establish specific jurisdiction for the additional reason that they do not even relate to the accused products. The Complaint identifies Cutera's "products using pulsed light technology for hair removal" as the products that allegedly infringe the '568 and '844 patents. Compl. ¶¶ 8 & 12. But the only pulsed-light product that Cutera has ever marketed for hair reduction is the PW700 handpiece, which can be used on the Solera Opus and Xeo platforms. *See* Second Santilli Decl. ¶ 2; Compl.

---

[7] The cases Plaintiffs rely upon are readily distinguishable. In *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), the Federal Circuit found that price quotation letters were offers to sell under § 271(a) based on "the substance conveyed in the letters, *i.e.*, a description of the allegedly infringing merchandise and the price at which it can be purchased." *Id.* at 1379. Cutera's promotional materials, by contrast, did not include any pricing information. In *Systemation, Inc. v. Engel Industries, Inc.*, 992 F. Supp. 58 (D. Mass. 1997), the court found that the accused infringer's sale of the allegedly infringing product to a Massachusetts distributor provided specific jurisdiction. *Id.* at 59-61. By contrast, Cutera did not sell or offer to sell the accused product in Massachusetts prior to the filing of Plaintiffs' Complaint. Finally, *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978 (1st Cir. 1986), and *Good Hope Industries, Inc. v. Ryder Scott Co.*, 389 N.E.2d 76 (Mass. 1979), were not patent cases and did not address "offers to sell" under § 271(a).

¶¶ 8 & 12 ("Cutera's 'PW700' handpiece is utilized in the Solera and Xeo platforms for performing hair removal treatment.").[8]

The promotional materials Cutera sent to Ms. Jenkins, however, do not even mention the PW700 handpiece. *See* Jenkins Decl. Ex. 1. In fact, to the extent the promotional materials sent to Ms. Jenkins discuss hair removal, they refer to <u>laser</u> hair removal – <u>not</u> hair removal using <u>pulsed-light</u> technology. *Id.* at "Xeo SA: Adding Intelligence to Pulsed Light™" & "CoolGlide: Setting new standards of excellence in cosmetic laser treatments." And to the extent the promotional materials discuss pulsed-light technology, they refer to using pulsed-light technology for treating pigmented lesions (*i.e.*, sun damage and solar lentigines) – <u>not</u> hair removal. *Id.* It is not surprising that the promotional materials sent to Ms. Jenkins do not relate to hair removal using pulsed-light since those materials were copyrighted in <u>2000 through 2004</u>, whereas the PW700 handpiece was not cleared for hair reduction until <u>April 2005</u>.[9]

Because the promotional materials sent to Ms. Jenkins do not relate to "products using pulsed light technology for hair removal" (*i.e.*, the PW700 handpiece), sending those materials to Massachusetts cannot constitute "transacting any business in this commonwealth" or

---

[8] The PW700 handpiece is discussed in the brochures that Plaintiffs received at the 2005 AAD and ASLMS tradeshows. *See* Davis Decl. Ex. A at 7 & Ex. B at 1-2.

[9] Plaintiffs nevertheless claim that a 2003 brochure contained in the promotional materials sent to Ms. Jenkins purportedly "states that '[t]he XEO incorporates effective hair removal . . . with an integrated 600-800 IPL [intense pulsed light] device.'" (Opp. at 6). Absent Plaintiffs' selective editing, however, that is <u>not</u> what the brochure says. The full, unedited quote is "[t]he XEO incorporates hair removal[,] vascular, non-ablative and now pigmented lesions with an integrated 600-800nm IPL device." Jenkins Decl. Ex. 1 at "2003 Editor's Choice Awards," *Aesthetic Trends & Technologies* (Winter 2003). Prior to FDA approval of the PW700 for hair reduction in April 2005, the Xeo used lasers for hair removal, vascular and non-ablative treatments. *See* Second Santilli Decl. ¶ 3. (In fact, it is the Xeo's use of lasers for hair removal that Plaintiffs accuse of infringement in the first case filed by Plaintiffs in this Court.) By contrast, prior to April 2005, the Xeo used pulsed-light technology to treat <u>only</u> pigmented lesions. *See* Second Santilli Decl. ¶ 4; Jenkins Decl. Ex. 1 at "CoolGlide: Setting new standards of excellence in cosmetic laser treatments."

NY1:\1343275\01\SSH701!.DOC\13906.0004

"causing tortious injury by an act or omission in this commonwealth" under the Massachusetts Long-Arm Statute.[10]

### B. The Exercise of Specific Jurisdiction Over Cutera in This Forum Would Be Inconsistent with the Limitations of the Due Process Clause

In an effort to satisfy the Due Process Clause, Plaintiffs argue that Cutera sent promotional materials, employs a sales representative, attends tradeshows, and posts information on its Web site concerning its pulsed-light hair removal product. *See* Opp. at 9-10. Those acts, however, are insufficient to satisfy the Due Process Clause because they do not provide the basis for Plaintiffs' claims.

Plaintiffs' cause of action is the alleged infringement of its patents. "Patent infringement occurs when a party 'without authority makes, uses, offers to sell or sells any patented invention.'" *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999) (affirming finding of no personal jurisdiction and improper venue) (citation omitted); *Ecological Sys. Tech. v. Aquatic Wildlife Co.*, 142 F. Supp. 2d 122, 125 (D. Mass. 2000) (finding no personal jurisdiction). "Thus, for there to be specific personal jurisdiction over [an accused infringer] in [a particular state], [the Plaintiff] would have to allege that [the accused infringer] did one of those listed activities in [the state]." *HollyAnne*, 199 F.3d at 1308; *Ecological Sys.*, 142 F. Supp. 2d at 125 ("For specific personal jurisdiction to exist over [the accused infringer] in

---

[10] Moreover, the promotional materials sent to Ms. Jenkins are irrelevant to the jurisdictional inquiry because they were not received in Massachusetts until after the Complaint was filed. The post-mark on the envelope containing the promotional materials shows that it was sent to Ms. Jenkins by U.S. Mail on April 7, 2005, from Brisbane, California. *See* Jenkins Decl. Ex. 1. If the materials were sent from California by U.S. Mail on April 7, 2005, they could not have been received by Ms. Jenkins in Massachusetts until sometime after April 7, 2005. Because Ms. Jenkins received the materials in Massachusetts after the filing of Plaintiffs' Complaint, that event is irrelevant to the jurisdictional inquiry at issue. *See Noonan v. Winston Co.*, 135 F.3d 85, 94-95 (1st Cir. 1998) (rejecting "as irrelevant post-complaint contacts").

Massachusetts, Plaintiffs must allege that [the accused infringer] did one of those proscribed patent infringement activities in Massachusetts.").

In the present case, none of the acts of which Plaintiffs complain constitute the making, using, offering for sale or selling of the allegedly infringing devices in Massachusetts. As discussed above, Cutera's sending of promotional materials to Ms. Jenkins was not an "offer to sell" under § 271(a). Similarly, employing a sales representative who is charged with promoting and selling pulsed-light products, promoting pulsed-light products at tradeshows, and posting news releases and product request forms about pulsed-light products on Cutera's Web site do not constitute making, using, offering for sale or selling the accused products. As a result, exercising specific jurisdiction over Cutera would violate the Due Process Clause. *See Ecological Sys.*, 142 F. Supp. 2d at 126 ("Personal jurisdiction over [the accused infringer] for Plaintiffs' patent infringement claim is not proper in Massachusetts, because [the accused infringer] did not make, use, offer to sell, or sell the patented technology in Massachusetts.").[11]

### III. CUTERA IS NOT SUBJECT TO GENERAL JURISDICTION IN THIS ACTION

Almost as an afterthought, Plaintiffs now contend that Cutera is subject to general jurisdiction in Massachusetts. *See* Opp. at 13. To establish general jurisdiction, however, Plaintiffs must demonstrate both that general jurisdiction is authorized by Massachusetts law and

---

[11] The cases Plaintiffs rely upon are inapposite. In *Lifting Technologies, Inc. v. Dixon Industries, Inc.*, No. CV-96-68-M-CCL, 1996 WL 653391 (D. Mont. Aug. 27, 1996), the court found that an advertisement in a trade publication coupled with the sending of mailings to a Montana resident – which included a price list -- satisfied the Due Process Clause. *Id.* at *4-6. In *Adhesive Technologies, Inc. v. Western Trimming Corp.*, Civil No. 94-415-B, 1995 U.S. Dist. LEXIS 8889 (D.N.H. June 8, 1995), the court found personal jurisdiction where the accused product was actually sold in the forum. *Id.* at *9. In *Bradley Schlachter v. American Ingenuity, Inc.*, Civil Action No. 3:96-CV-1914-P, 1997 U.S. Dist. LEXIS 20840 (N.D. Tex. July 15, 1997), the court found personal jurisdiction over an accused infringer who offered to sell the allegedly infringing product in the forum. *Id.* at *5-12.

that the exercise of that jurisdiction comports with the Due Process Clause. *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 54 (D. Mass. 1997). Plaintiffs have not satisfied either requirement.[12]

### A. Massachusetts Law Does Not Authorize the Assertion of General Jurisdiction over Cutera

Massachusetts General Laws Chapter 223 § 38 provides a basis for asserting general jurisdiction over a foreign corporation:

> In an action against a foreign corporation . . . which has a usual place of business in the commonwealth, or with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the preceding section relative to the service on domestic corporations . . . .

Section 38, however, does not authorize general jurisdiction over Cutera for at least two reasons.

*First*, Cutera is not "a foreign corporation . . . which has a usual place of business in the commonwealth, or . . . is engaged in or soliciting business in the commonwealth, permanently or temporarily." Section 38 requires that the foreign defendant's activities "closely approximate the regular conduct of a domestic corporation." *Canning v. Gunstock Area Comm'n*, 695 F. Supp. 602, 603 n.1 (D. Mass. 1988). Cutera is a Delaware corporation with its principal place of business in California. *See* Second Santilli Decl. ¶ 5. Cutera is not licensed or registered to do business in Massachusetts, does not own operate, lease, or control any real property in Massachusetts, does not have an office in Massachusetts, does not have a telephone listing or address in Massachusetts, does not manufacture any of its products in Massachusetts, does not maintain a distribution network in Massachusetts, does not have a registered agent for service of process in Massachusetts, does not have a bank account in Massachusetts, and does

---

[12] Plaintiffs have failed to even identify any Massachusetts statute that authorizes the exercise of general jurisdiction over Cutera.

NY1:\1343275\01\SSH701!.DOC\13906.0004

not maintain any corporate books or records in Massachusetts. *Id.* ¶¶ 6-14. Cutera's activities in Massachusetts clearly do not "closely approximate the regular conduct of a domestic corporation." *Canning*, 695 F. Supp. at 603 n.1.

*Second*, Plaintiffs did not serve Cutera "in accordance with the preceding section," *i.e.*, § 37. Section 37 mandates that service be made "upon the president, treasurer, clerk, resident agent . . ., cashier, secretary, agent or other officer in charge of its business." Section 37 further requires that service be made on those individuals "in-hand within Massachusetts." *LTX*, 979 F. Supp. at 56.[13] Instead of complying with the specific service requirements of § 37, however, Plaintiffs obtained a waiver of service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. By failing to comply with § 37, Plaintiffs cannot now rely upon § 38 as a basis for asserting general jurisdiction. *See LTX*, 979 F. Supp. at 56-57 (dismissing action for lack of personal jurisdiction where plaintiff did not satisfy the service requirements of § 37).

**B.     The Exercise of General Jurisdiction Over Cutera in This Forum Would Be Inconsistent with the Limitations of the Due Process Clause**

"General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (citation omitted). Moreover, "[t]he standard for evaluating whether . . . contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific

---

[13] "This is not merely technical quibbling. Section 38 is not a long-arm statute; it does not allow Massachusetts to 'reach out' and bring a foreign corporation within its jurisdiction by means of extraterritorial service. Rather, § 38 enables Massachusetts to exercise jurisdiction over foreign corporations whose conduct in Massachusetts approximates that of regular domestic corporations and thus can be deemed to be physically 'present' in Massachusetts." *LTX*, 979 F. Supp. at 57 (citation omitted).

jurisdiction questions." *Noonan*, 135 F.3d at 93 (internal quotations and citations omitted). Here, Cutera lacks sufficient minimum contacts with Massachusetts to subject it to general jurisdiction in this forum.

As stated above, Cutera is a Delaware corporation with its principal place of business in California, and is not licensed or registered to do business in Massachusetts, does not own operate, lease, or control any real property in Massachusetts, does not have an office in Massachusetts, does not have a telephone listing or address in Massachusetts, does not manufacture any of its products in Massachusetts, does not maintain a distribution network in Massachusetts, does not have a registered agent for service of process in Massachusetts, does not have a bank account in Massachusetts, and does not maintain any corporate books or records in Massachusetts. *See* Second Santilli Decl. ¶¶ 5-14.

Furthermore, Cutera's alleged contacts with Massachusetts are insufficient to establish general jurisdiction. *See* Opp. at 14-15. First, Plaintiffs have produced no <u>evidence</u> that "Cutera routinely mails promotional and sales information to Massachusetts residents." *Id.* at 14. Second, Cutera derives minimal revenue from the business it conducts in Massachusetts. Indeed, in the twelve months preceding the filing of Plaintiffs' Complaint, Cutera's sales in Massachusetts amounted to 0.178 percent of its total sales during that period. *See* Second Santilli Decl. ¶ 15. Third, Plaintiffs fail to identify any workshops or seminars that Cutera conducted in Massachusetts prior to the filing of the Complaint. *See Noonan*, 135 F.3d at 94-95 (rejecting "as irrelevant post-complaint contacts"). Fourth, Plaintiffs fail to identify any tradeshows that Cutera attended in Massachusetts prior to the filing of the Complaint. Opp. at

11

14.[14] Finally, that Cutera "has employed a sales representative responsible for the Northeast" (*id.* at 15), does not establish general jurisdiction in Massachusetts. *See Seymour v. Parke, Davis & Co.*, 423 F.2d 584, 585, 587 (1st Cir. 1970) (holding that the defendants had insufficient contacts with the forum to warrant general jurisdiction even though defendants employed salesmen who transacted business in the forum, disseminated product information in the forum, and took orders in the forum); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 214 (1st Cir. 1987) (declining to exercise general jurisdiction over defendant who advertised in trade journals circulated in the state, hired eight sales representatives to provide information about its products to state hospitals and doctors, and sold products to distributors who then sold them in-state).[15]

In the end, Plaintiffs have not met their burden of establishing that Cutera's contacts with Massachusetts are sufficiently "continuous and systematic" to establish general jurisdiction.

---

[14] To the extent Plaintiffs rely on their receipt of Cutera promotional materials at tradeshows outside Massachusetts, such unilateral activity by Plaintiffs is irrelevant to the minimum contacts inquiry. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

[15] Plaintiffs' reliance on *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484 (D. Mass. 1996), is misplaced. There, the defendant had sales of over $30,000,000 pursuant to long term contracts, employed five sales representatives who lived in Massachusetts and worked out of their homes, had an exclusive sales agency agreement with a third party for the sale of certain products, made substantial annual payments to Massachusetts hospitals and researchers to perform clinical studies of its products, registered with the Massachusetts Secretary of State to do business in the Commonwealth, and appointed an agent for service of process in Massachusetts. *Id.* at 490-91. Such contacts are far more continuous and systematic than any contacts Cutera has with Massachusetts.

NY1:\1343275\01\SSH701!.DOC\13906.0004

## IV.  CONCLUSION

For the foregoing reasons, Cutera respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue.[16]

Dated: August 5, 2005

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

_____
James L. Messenger BBO #547236
Patrick O'Toole BBO #559267
100 Federal Street
Boston, Massachusetts 02110
Telephone: (617) 772-8300
Facsimile: (617) 772-8333

Jonathan A. Marshall
Timothy E. DeMasi
John D. Garretson
Daniel J. Melman
767 Fifth Avenue
New York, New York 10153

---

[16] Palomar contends that "[t]he parties are making preparations to try [Palomar's first case] before the Court at the earliest date following the Court's ruling on Cutera's summary judgment motion." Opp. at 4. Because all of the asserted claims of the '844 patent are invalid and not infringed as a matter of law (see Cutera's Motion for Summary Judgment), the only issue that need be tried is Cutera's inequitable conduct claim. Moreover, the status of that case has no bearing on the jurisdictional and venue issues raised in this case.

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply in Support of Defendant Cutera, Inc.'s Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) was served by hand on August 5, 2005, upon counsel for Plaintiffs:

Wayne L. Stoner
Kate Saxton
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

_____

NY1:\1343275\01\SSH701!.DOC\13906.0004